UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
ERASTUS PRATT,

              Plaintiff,

       -against-

KILO INTERNATIONAL, LLC
d/b/a ROCKSMITH, THE ROCKSMITH
RETAIL CORP., THE ROCKSMITH
ONLINE CORP., POWER CIRCLE, INC,
d/b/a WUTANG LTD, KENSHIN
ICHIKAWA, AND ERIK MARINO,

              Defendants.
-----------------------------------------------------X

14 CV 834 (SJ) (VMS)

<u>MEMORANDUM &
ORDER</u>

A P P E A R A N C E S

GARSON, SEGAL, STEINMETZ, FLADGATE LLP
164 West 25th Street
Suite 11R
New York, NY 10001
By:    Robert David Garson
*Attorney for Plaintiff*

KEVIN E. ROCKITTER
180 Froehlich Farm Blvd.
Woodbury, NY 11797
By:    Kevin E. Rockitter
*Attorneys for Defendants*

**JOHNSON, U.S.D.J.:**

       This lawsuit boils down to whether an individual's email address is confidential information that is worth $75,000.

The action is before the Court on defendants Kilo International, LLC ("Rocksmith"), The Rocksmith Retail Corp., The Rocksmith Online Corp., Power Circle, Inc. d/b/a WuTang Ltd ("WuTang"), Kenshin Ichikawa and Erik Marino (collectively "Defendants") motion to dismiss the Amended Complaint filed in this Court on May 6, 2014 by plaintiff Erastus Pratt ("Plaintiff" or Pratt").[1]  Pratt alleges three claims: (1) misappropriation, misuse and conversion of confidential information; (2) unjust enrichment; and (3) breach of non-disclosure agreement. By way of background, as alleged in the Amended Complaint, Plaintiff is a resident of New Jersey who has worked in the consumer apparel industry for over 20 years. Defendant Rocksmith is a Delaware corporation with its principal place of business in Brooklyn, New York. Defendants Rocksmith Retail Corp., Rocksmith Online Corp, and WuTang Ltd, are New York corporations with principal places of business in Brooklyn, New York. Defendant Kenshin Ichikawa ("Ichikawa") is a New York resident and the CEO, Creative Director and "Member" of Rocksmith, Rocksmith Retail, Rocksmith Online and WuTang. Defendant Erik Marino ("Marino") is a New York resident and principal to Rocksmith, Rocksmith Retail, Rocksmith Online and WuTang.

Plaintiff alleges that his decades of experience "and extensive research and development within the apparel and consumer product market" culminated in "a substantial number of commercially valuable trade secrets" which are "embodied . .

---

[1] Plaintiff is referred to as both "Erastus" and "Ertis" Pratt in the pleadings and exhibits.

. in writing, materials, procedures, lists of suppliers and customers and the like."
Plaintiff and defendant Rocksmith entered into Mutual Non-Disclosure Agreement on July 28, 2011. The agreement defines confidential information as follows:

> "Confidential information" shall include all data, materials, products, technology, computer programs, specifications, manuals, business plans, software, marketing plans, business plans, financial information, and other information disclosed or submitted orally, in writing, or by any other media, by the Disclosing Party to the Receiving Party.

The agreement goes on to describe the parties' responsibilities as to any confidential information disclosed.

> The Receiving Party agrees that Confidential Information is considered confidential and proprietary to the Disclosing Party. The Receiving Party shall hold the same in confidence, shall not use the Confidential Information other than for the Authorized Purpose, and shall disclose it only to its officers, directors, or employees with a specific need to know.

A second agreement provided, <u>inter alia</u>, that Plaintiff would provide "consulting services" at a rate of $1,500 per month for six months and "financial services" for $6,000.

Plaintiff claims to have facilitated the introduction of defendant Ichikawa to a clothing manufacturer referred to as Bill Tong ("Tong"). Plaintiff claims Defendants emailed Tong, failed to keep Plaintiff "apprised of developments" involving Tong, and failed to pay Plaintiff commissions. Plaintiff argues that Tong is among his professional

contacts and was "vetted and cleared as trustworthy. . . which is why introductions were sought" and why compensation is due.

## DISCUSSION

To defeat a Federal Rule 12(b)(6) motion to dismiss, Plaintiff must state a plausible claim. See Morgan v. County of Nassau, 720 F. Supp. 2d 229, 234 (E.D.N.Y. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not legally sufficient to withstand a 12(b)(6) motion. Iqbal, 556 U.S. at 678. Plaintiff must offer "enough facts to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). However, the Plaintiff need not set forth a multitude of facts to survive a motion to dismiss, but rather a "short and plain statement of the claim showing that the pleader is entitled to relief" will suffice. Fed. R. Civ. P. 8(a)(2). The Court must accept all of the allegations in the Amended Complaint as true, and construe all reasonable inferences in favor of the plaintiff. See Connell v. Signoracci, 153 F.3d 74 (2d Cir. 1998).

A. Misappropriation

"It is a well established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." Carvel Corp. v. Noonan, 350 F.3d 6, 15 (2d Cir. 2003) (quoting Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 521 N.Y.S.2d 653 (1987)). "The legal duty must spring from circumstances extraneous to and not constituting elements of the contract. Clark-Fitzpatrick, 70 N.Y.2d at 389, 521 N.Y.S.2d at 656-7; see also Albemarle Theater, Inc. v. Bayberry Realty Corp., 27 A.D.2d 172, 277 N.Y.S.2d 505 (N.Y. App. Div. 1967).

Here, the parties executed a non-disclosure agreement and neither party disputes that the agreement is valid. "Under New York law, when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual." Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy, 449 Fed. App'x 575, 59 (2d Cir. 2011). Plaintiff has not articulated any separate duty owed to him outside of the agreement, and the case law suggests that there is none.

In Document Sec. Sys., Inc. v. Coupons.com, No. 11 CV 6528 (CJS), 2013 WL 1945954, at *1 (W.D.N.Y. May 9, 2013), the parties entered into a non-disclosure agreement "[t]o evaluate a potential business

relationship regarding patented and unpatented technology and trade secrets" possessed by the plaintiff. Plaintiff provided defendant with certain security technology that plaintiff deemed to be subjected to the agreement. Id. After defendant declined to purchase the technology, plaintiff allegedly learned that defendant was using it anyway, and an action ensued. Id.

In dismissing plaintiff's misappropriation claim, the court held that there was no duty independent of the contract: "[W]here parties deal at arm's length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." Id. at *4. The court rejected the argument that a course of dealing was an extraordinary circumstance giving rise to a separate fiduciary duty, finding that the amended complaint described a "seemingly arms-length business relationship." Id.

Because the Amended Complaint alleges a claim of misappropriation duplicative of the breach of contract that is also alleged, and sets forth no extraordinary circumstances, the misappropriation claim is hereby dismissed.

B. Unjust Enrichment

"The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement." Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 53 (2d Cir. 2011). "It is black-letter law in New York that recovery on an equitable theory of unjust enrichment is not permitted where the matter at issue is covered by a valid, enforceable contract." Coty, Inc. v. L'Oreal S.A., 320 F. App'x 5, 6-7 (2d Cir. 2009) (citations omitted); see also Document Sec. Sys., Inc. v. Coupons.com, Inc., No. 11 CV 6258 (CJS), 2012 WL 3597769, at *5 (W.D.N.Y. Aug. 20, 2012) (dismissing claim of unjust enrichment where "there is no factual allegation suggesting that the [non disclosure agreement] is not a valid and enforceable agreement governing the parties' business relationship."). Where, as here, Plaintiff alleges a valid contract, an unjust enrichment claim cannot be brought. Therefore, this claim is also dismissed.

C. Breach of Contract

As stated, supra, the parties do not dispute the existence and applicability of the non-disclosure agreement. Defendants move to dismiss that claim because "the disclosure of the information which forms

the basis of plaintiff's claim was authorized." This is a dispute that cannot be resolved via a 12(b)(6) motion.

D. <u>Subject Matter Jurisdiction</u>

The Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500, 514, 126 S.Ct. 1235 (2006). Where jurisdiction is alleged to arise under 28 U.S.C. § 1332, the amount in controversy must exceed $75,000. <u>See</u> 28 U.S.C. § 1332. "[A] party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess" of that amount. <u>Chase Manhattan Bank, N.A. v. Am. Nat. Bank and Trust Co. of Chi.</u>, 93 F.3d 1064, 1070 (2d Cir. 1996); <u>see</u> <u>also</u> <u>In re Application of Ann Cianfione</u>, No. 14 MC 63, 2014 WL 6883128, at *1 (N.D.N.Y. Dec. 4, 2014) (finding subject-matter jurisdiction lacking where "there is no allegation or plausible indication" that the amount in controversy requirement was fulfilled).

In this case, the non-disclosure agreement does not specify damages. The consulting agreement specifies Plaintiff's compensation as $6,000 plus $1,500 per month for six months, for a total of $15,000.

There is no dispute that this $15,000 has already been paid to Plaintiff. Although neither agreement mentions commission, Plaintiff claims that the clothing manufacturers themselves paid him commissions on Defendants' orders. In support, he submits invoices totaling $6,734 and states that pursuant to a prior clothing order he received $.15 for each of the 9,936 t-shirts ordered, totaling $1,490.40. The Amended Complaint does not allege that any clothing orders resulted from the relationship between Defendants and Tong, much less how much revenue resulted from any such orders, or even that the parties had any agreement to provide Plaintiff with commissions. Plaintiff's prayer for relief merely demands "damages in an amount to be determined at trial."

Interpreting all of this in the light most favorable to Plaintiff, Amidax Trading Group v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011), the Court finds that Plaintiff has failed to plausibly allege that the amount in controversy threshold has been met. See, e.g., Weber v. Align Tech., Inc., No. 07 CV 0535, 2010 WL 2265418, at *9 (N.D.N.Y. Jun. 22, 2010) (plaintiff must "plead allegations from which damages attributable to defendant's conduct might be reasonably inferred"); cf. Sinclair v. TubeSockTedD, 596 F. Supp. 2d 128, 134 (D.D.C. 2009) ("Federal jurisdiction based on diversity of citizenship cannot simply be assumed . . . with discovery then permitted in hopes that a proper basis for jurisdiction

can later be ascertained. The proper course . . . is for a plaintiff to pursue any valid claims in a state court where both subject-matter and personal jurisdiction exist.").

## CONCLUSION

For the foregoing reasons, Plaintiff's Amended Complaint is dismissed. The Clerk of the Court is directed to close the case.

SO ORDERED.

Dated: March 10, 2015 /s
      Brooklyn, NY                        Sterling Johnson, Jr., U.S.D.J.